Morris J. SPIVACK, Plaintiff-Respondent,

v.

Tory D. SPIVACK, Defendant-Appellant.

No. 7415.

Springfield Court of Appeals.

Missouri.

Oct. 14, 1955.

Harold S. Hutchison, Vienna, Claude T. Wood, Richland, for defendant-appellant.

RUARK, Judge.

On trial of a divorce case defendant was awarded decree of divorce and alimony in gross. She filed her motion to amend judgment or in alternative for new trial. The judgment was amended so as to remove the alimony in gross and allow defendant alimony in the sum of $60 a month and at-torneys' fees in amount of $150. The original and the amended judgment concluded with the following words:

"It is further ordered, adjudged and decreed by the court that upon satis-faction of this judgment, defendant shall be thereby divested of all right, title and interest in and to plaintiff's property, including dower in any real estate which the plaintiff now owns or which the plaintiff may have owned during his marriage to defendant."

Defendant has appealed.

At argument defendant's counsel tossed a mouse in the meal barrel by suggesting they now believe they have appealed to the wrong court and suggest transfer to the Su-preme Court because title to real estate is involved. They cite Johnston v. Johnston, Mo.App., St.L.C.A.1926, 280 S.W. 76. In that case the applicable portion of the de-cree was:

" 'Upon the payment of said alimony the defendant is to execute and deliver to the plaintiff a quitclaim deed to the lands of plaintiff, and deposit the same with the clerk of the circuit court for the plaintiff.' "

Jurisdiction was accepted by the Supreme Court, Johnston v. Johnston, 16 S.W.2d 91 and disposed of by that court upon inade-quacy of briefs, without considering the ap-pellate jurisdiction.

The record in this case shows plain-tiff had no property except real estate and defendant had no claim or interest therein except that of inchoate dower. The sole question is whether the right of inchoate dower is such an interest in the title to real estate as to vest jurisdiction in the Supreme Court under art. 5, sec. 3, Constitution of 1945, V.A.M.S. We are of the opinion that it is not. In Murawski v. Murawski, Mo. Sup., 203 S.W.2d 714, loc. cit. 715, decided by the Supreme Court in 1948, it was said:

"Assuming, but not deciding, that plaintiff has inchoate right of dower in defendant's undivided one half interest in the lot, is such interest 'real estate'

within the meaning of the term 'real estate' in the Constitution? The question seems to be definitely answered in Brannock v. Magoon, 216 Mo. 722, 116 S.W. 500, where it is ruled that inchoate right of dower in real estate is not 'real estate' within the meaning of that term as used in the Constitution. [Citing cases.]"

The case was transferred to the Court of Appeals. Brannock v. Magoon so cited in the Murawski case contains considerable text and case authority, all of which, while recognizing that inchoate dower is a substantial right possessing many of the incidents of property, hold it is not an estate nor an interest in real estate. We are of the opinion that the Murawski case is controlling and therefore retain jurisdiction.

■■■ Appellant's first assignment is that the court was without jurisdiction to adjudge that upon satisfaction of judgment defendant should be divested of all her right, title and interest in the plaintiff's property, including dower in real estate. A wife who obtains a divorce for fault or misconduct of her husband does not thereby lose her dower. Section 469.200, RSMo 1949, V.A.M.S.; Borders v. Niemoeller, Mo.App., 239 S.W.2d 555; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 584, 109 A.L.R. 1061. And it has been repeatedly held that a decree in a divorce case which attempts to divest or to *compel* relinquishment of title or dower in the husband's land is void. Ecton v. Tomlinson, 278 Mo. 282, 212 S.W. 865; Johnston v. Johnston, Mo.App., 280 S.W. 86; Scales v. Scales, 65 Mo.App. 292; Bishop v. Bishop, Mo.App., 151 S.W.2d 553. In Ecton v. Tomlinson above cited, at 212 S.W. loc. cit. 866, it is said:

"For the same reason it cannot in such an action by its decree compel the relinquishment by the wife of her dower in her husband's lands. Davison v. Davison, 207 Mo. 702, 106 S.W. 1; Scales v. Scales, 65 Mo.App. 292. In an action for divorce where the court attempts to take into account, adjudicate and settle all questions of property

rights, both present and inchoate, between the parties, it is not in so doing merely erroneously exercising jurisdiction; it is proceeding wholly without jurisdiction. It follows, therefore, that its judgment in such respect is void."

It is noted in Arnold v. Arnold, Mo.Sup., 222 S.W. 996, 1000, in an opinion in banc rendered in 1920, the decree complained of was:

" 'The award of alimony herein made shall be in lieu of all dower and property and marital rights of the plaintiff in or against the estate of defendant.' "

At 222 S.W. loc. cit. 1001 the court, after referring to the statute (now 469.200), stated:

"That does not mean that the court in adjusting the matter of alimony and property between parties could not make any order affecting the wife's dower interest; on the contrary, it has been held by this court that a trial court might award alimony on condition that the wife release her dower. Aylor v. Aylor [Mo.] 186 S.W. 1068, loc. cit. 1071, 1072. The paragraph in modification of the decree in this case, quoted above, is sufficiently explicit to show it was the intention of the court that the award should be on that condition. If it is not sufficiently explicit to express that condition, then a nunc pro tunc entry would make it so."

The Aylor case so cited did not, we think, make such holding. Nevertheless, the Arnold case appears to be the last and therefore controlling decision of the Supreme Court on the subject. It has been cited many times and certain portions of it have been criticized and distinguished, but not that portion of the opinion above quoted. State ex rel. Couplin v. Hostetter, 344 Mo. 770, 129 S.W.2d 1, loc. cit. 4, while criticizing some language of the Arnold case, impliedly approves the holding by stating:

"Moreover, in this very case a conditional award was upheld, that is, an award of alimony in gross on condition

that the plaintiff waive her dower and marital rights."

Distilling the essence of the holdings in the shadow of the Arnold case, it is our conclusion that the trial court in a divorce case is wholly without jurisdiction to divest title or dower or to compel relinquishment of the same, but that such court may require the relinquishment *as a condition* to the award and receipt of alimony. There remains only the question whether the decree in this case can be interpreted as a *condition* so as to make it subject to correction by nunc pro tunc entry. In the Arnold case the court considered the language of the decree, that the award of alimony was "in lieu," sufficient to show it was the intention of the court that the award should be on condition. The language of the judgment in the present case is that "the defendant shall be thereby divested," et cetera, indicating, we think, a purpose of the court to divest dower by its own judgment rather than to impose its relinquishment upon the defendant as a condition. In fact, the language of the court in the colloquy at the time indicates that such was the intention. This was beyond the jurisdiction of the court and is not susceptible of amendment nunc pro tunc, for such an amendment may not be made to correct a mistake or oversight of the judge nor to correct judicial errors, Ackley v. Ackley, Mo.App., 257 S.W.2d 401, 403, and cases cited; Haycraft v. Haycraft, Mo.App., 141 S.W.2d 170, 171, and cases cited, nor to breathe life into a void judgment. State ex rel. Arthur v. Hammett, 235 Mo.App. 927, 151 S.W.2d 695, 701; State v. Pemberton, 235 Mo.App. 1128, 151 S.W. 2d 111, 118.

Irrespective of the foregoing, this portion of the judgment should not have been entered as written, for it contained the provision that "upon satisfaction of this judgment" defendant shall be thereby divested. Such a provision might be practical in respect to an allowance of alimony in gross as first made by the court, where payment of the whole amount might be made and satisfaction had. However, after the judgment was amended to provide for monthly alimony it is difficult to see how it could have been "satisfied" except by death or by order after remarriage. If it was intended to leave the plaintiff free to convey his property during his lifetime without consent of the wife, it did not accomplish the purpose and the only practical effect would have been a benefit inuring to heirs of the plaintiff after his death, at which time defendant's alimony would have ceased and she would have been dependent solely upon her dower for support in the future. We hold for the appellant on this point.

Appellant's second assignment is that the alimony allowed ($60 per month) is grossly inadequate.

The respondent, while he had his petition for divorce prepared by an attorney, had no counsel representing him at the trial, has filed no brief and is not represented in this court. At time of trial he was 84 years of age, spoke with a heavy accent, and there is some indication in the record that age was commencing to slow his mental processes. The trial judge went as far as a court could go in according the respondent every opportunity to present his case and in protecting his interests in regard to admissibility of evidence. Likewise counsel for defendant were eminently fair and forbearing and they have been completely fair in their presentation of the questions in their brief here, even to the extent of calling attention to some authority which might be taken as against some of their contentions. It is not appellant's fault, and her case should not be permitted to suffer because respondent was without counsel. Nevertheless, respondent was present without witnesses, without proof except his own testimony, was inept in cross-examination; and it is our burden to scrutinize the evidence with close attention to those things which might otherwise be pointed out by counsel.

Both petition and cross petition pleaded general indignities. The evidence was sufficient for the court to have adjudged either of the parties to have been the guilty or the innocent and injured person. Nevertheless,

the things charged and proved were those which probably would not have brought about a divorce had the parties been young and vigorous, and most of them appear to have their origin in the onset of age and ill health. One of the principal disputes was as to the cause of separation. Plaintiff contended that his wife had left his bed for some time and that finally she separated from him when he was ill and needed her care. On the other hand, defendant contended that plaintiff told her to leave home, put her out and upon her daughter and failed to supply her medical attention when she was in serious need of it.

As stated, plaintiff was 84 years of age, was in ill health and had been in a hospital for at least four months. Defendant was 70 years of age and likewise in ill health. There was some evidence she was overweight. She had a rupture on both sides from an old incision, an enlarged heart, high blood pressure and pleurisy pains. She went to the doctor once a week. Her heart condition was such that there was required to be kept on hand a powerful narcotic to be administered upon occasions. Her doctor had recommended a stay of a month or two in the hospital. Thus we have both parties of advanced years, both sans earning capacity and both in need of care.

Plaintiff and defendant had been married approximately eight and a half years. Both had children of former marriages, but none of course of this one. At time of the marriage defendant had about $170. Plaintiff then owned (subject to mortgage) a double business building on Clayton Avenue in St. Louis which he had purchased shortly before at a cost of $9,000. This was a two-story building with two store rooms below and two apartment flats above. The evidence was that it was old-fashioned, in some need of repair, and there seemed to be more than normal turn-over of tenants. Plaintiff testified he thought it was worth about $10,000. Defendant produced a qualified real estate appraiser who gave the property on an income basis a value of between $17,000 and $18,000. However, he did not take into account a mortgage lien in amount of $4,000. The trial court was of the opinion that the property was worth from $15,000 to $16,000, subject to the mortgage. Thus the net value, based on income, ranged somewhere between $10,000 and $14,000. Defendant's appraiser witness testified the monthly rental amounted to $199.50. After making deductions for vacancies, repairs, taxes, water, et cetera, he arrived at a total net income of $1,216 per year, but this income figure likewise did not take into account any interest or amortization of the $4,000 mortgage. Plaintiff had no other property except a small residence at High Gate, which the parties on both sides appeared to value at $900. He had no other source of income. There was some intimation that he drew a Spanish-American War pension, but this plaintiff denied. He testified that he enlisted but was "never called out." Plaintiff stated to the court that he had increased his mortgage by $600 "to pay off my present obligation" (possibly for allowances of temporary alimony, suit money and attorneys' fees). Of the little personal property which was in the home at the time of separation the defendant took the canned goods, chickens and household linen. The record does not show what happened to whatever furniture they had. Presumably plaintiff retained it. It is suggested for defendant that she assisted in the accumulation of the property. She testified that for some seventeen months during the marriage she kept a boarder, her grandson, who paid $12 a week, but testimony of plaintiff is to the effect the defendant's grandson did not pay regularly and what he did pay went for groceries. The increase in the value of the store building no doubt resulted from a general economic trend rather than through any effort on the part of the defendant. We think defendant's contention in this regard is not borne out to any appreciable extent.

According to the evidence produced by defendant herself, plaintiff's net income will not greatly exceed $100 per month. As a matter of fact, it is doubtful if it will reach that amount when the mortgage is considered. Defendant says that she needs

care. So does the plaintiff. Defendant says she needs hospitalization. So does the plaintiff. Defendant needs money for ordinary living expenses. So does the plaintiff. The court allowed her considerably more than half of plaintiff's net income. The remainder of such income is hardly sufficient even for his normal needs. We recently said in Simmons v. Simmons, Mo. App., 280 S.W.2d 877, 880, that in considering alimony the factors which enter into consideration are the financial status of the respective parties, including the question of their individual estates, incomes, obligations and necessities; the contribution of each to the accumulated property; the probable future prospects of each; their respective ages, health, ability to follow gainful occupations; their stations in life; their children, if any; the duration of the marriage and whether it was one of affection or convenience; and the conduct of the parties, with particular regard to the cause of the divorce and the relative or comparative responsibility of each one therefor. While we agree that the sum of $60 will probably not supply the defendant with all of her needs, we must consider the relative positions and the needs of both parties. The needs of the wife are certainly an item to be considered, but they are not the *only* thing which controls the question, and we are not willing to announce any doctrine from which it could hereafter be said that the husband must lie hungry and uncared for in order that the wife's full and complete necessities may be supplied. In addition to the alimony which the court has allowed her, the defendant will have dower in whatever property he has, which, as we have said heretofore, is a valuable asset and should be taken into consideration.

 , The trial court at first awarded alimony in gross, then reconsidered the matter and determined that such could only result in dissipation of the only income-producing asset and that it would be to the benefit of both parties that the same be preserved if possible. In cases of this kind it is our duty to examine the whole record and to reach our own conclusions, giving great deference, however, to the conclusions of fact reached by the trial court when supported by substantial evidence. Fossett v. Fossett, Mo.App., 243 S.W.2d 625, 633. We are not inclined to disturb the judgment of the trial court as to the amount of alimony awarded.

Appellant's third and final assignment is that the court erred in excluding the deposition of a Dr. Hammler. This deposition was offered and admitted. Before it was read the court suggested that it was not admissible. The question raised was how and when the nonresidence is to be established on a notice to take depositions posted in the office of the circuit clerk (see Section 492.170 RSMo 1949, V.A.M.S.). Counsel for appellant concede that the record on this point is "inadequate." As a matter of fact, about all it shows is the discussion between the court and counsel. While the court *indicated* proof of nonresidence at the trial would not be sufficient to admit the deposition, the appellant did not actually offer such proof and there is no ruling of the court in respect to this question which can be pointed to as possible error.

 Furthermore, in the colloquy concerning the subject of the deposition it was substantially agreed that it had to do with the doctor's treatment of the appellant, her condition and the probable expense of such treatment. Thereafter the daughter, who accompanied the appellant on all of her visits to the doctor, was permitted to testify as to what the doctor said about her condition, the treatment, the medication, advice and probable expense. In this opinion we have accepted and assumed all of these expressions as true. The testimony contained in the deposition would be only cumulative, could not change the result, and the exclusion (if it had been exclusion) would be harmless error. Boring v. Kansas City Life Ins. Co., Mo.Sup., 274 S.W.2d 233, 239, and cases cited. This point is ruled against appellant.

 In cases of this character it is our duty to render such judgment as the trial court should have entered. Frank v. Frank,

Mo.App., 238 S.W.2d 912, 915. Therefore, the amended judgment of the circuit court is modified by excluding therefrom that portion (the whole of the last paragraph) which attempts to divest the defendant of dower and title. In all other respects such judgment is affirmed.

McDOWELL, P. J., and STONE, J., concur.