STATE OF MISSOURI at the relation of LEROY E. COUPLIN, Petitioner, v. JEFFERSON DAVIS HOSTETTER, WILLIAM DEE BECKER and EDWARD J. MCCULLEN, Judges of the St. Louis Court of Appeals.— 129 S. W. (2d) 1.

Court en Banc, June 6, 1939.

*Feigenbaum & Nations* and *Gus O. Nations* for relator.

*William J. Blesse, Rozier Meigs* and *William Kohn* for appellant in Court of Appeals.

772

DOUGLAS, J.—This is an original proceeding in certiorari to review for conflict with our decisions the opinion of respondents in the case of Edna N. Couplin v. Leroy E. Couplin, 121 S. W. (2d) 186. In October, 1935, Edna N. Couplin was granted a divorce from her husband, the relator, with alimony of $40 per month. The relator has not paid any alimony to date. In May, 1937, on his motion, the trial court modified its judgment for alimony so as to terminate the order for monthly payments and adjudged alimony in gross in the amount of $200. On appeal the respondents found it was conceded an award of alimony in gross, in lieu of further monthly installments, was error. They then declared while an action for divorce is a statutory action in this State and not a suit in equity, nevertheless it does partake of the nature of a suit in equity. Under this theory they entered a new award as follows: ''We are of the view that the judgment should be reversed and the cause remanded with directions to the trial court to sustain defendant's motion to modify the judgment respecting the monthly alimony payments to the extent of reducing the amount thereof from $40 to $20 per month beginning May 17, 1937, the date of the judgment herein appealed from, on condition that, since defendant has failed to comply with the order of the court as to the payment of the $40 per month alimony, and because of the further fact that defendant's salary of $150 per month which he receives as an Alderman of the City of St. Louis is not subject to the usual execution, said reduction of the decree of alimony shall become effective only upon the defendant, prior to February 1, 1939, paying plaintiff all unpaid alimony due her up to May 17, 1937, otherwise defendant's motion for modification to stand denied. It is so ordered.''

By finding that a divorce action partakes of the nature of a suit in equity and by attaching a condition to its order of modification, it is claimed that the respondents' opinion is in conflict with our decisions in which it was said a divorce proceeding, and its incidents, is one at law and not in equity. There is some confusion in

the expressions of this court on this subject which disappears upon an analysis of the opinions cited. It would be well first to relate briefly the history of the action. In England jurisdiction of divorce and alimony was included in the ecclesiastical law, a branch of the unwritten or common law, which was brought to this country with the other branches of the common law although we did not establish here the ecclesiastical courts which administered this law in England. In time, by statute, the administration of this law was assigned either to common law or equity courts, which courts carried on the old practices except where modified by the statutes of their creation. The various states generally extended the powers of the court to provide for absolute divorce with so-called permanent alimony. In England the only divorce was *a mensa et thoro,* or mere legal separation which did not disturb the obligation of the husband, although separated from his wife, to continue to support her. It becomes important to understand that the only means the ecclesiastical court had of enforcing its decree was by excommunication and when that punishment was forbidden for civil purposes then it became necessary to apply to a court of chancery for the purpose of carrying such decrees into effect. One who disobeyed a decree was certified to the court of chancery from which tribunal a writ of contempt was issued for his imprisonment. If imprisonment did not bring about obedience, then a writ of sequestration was issued against his property. If there was danger of flight, the writ of *ne exeat* was available. A dual jurisdiction over matters pertaining to divorce and alimony was thereby established. While divorce is statutory in this country, where not otherwise provided by statute our courts generally follow rules of equity and apply equitable principles. [See Schouler, Marriage, Divorce, Separation and Domestic Relations (6 Ed.), sec. 1466.]

In the Louisiana Territory, in 1807, it was ordained that the general court of the territory should have power to decree a divorce ''not only from bed and board, but, also from the bond of matrimony itself.'' [ 1 Mo. Territorial Laws, 90.] Then in 1817 the Superior or Circuit Court of the Territory of Missouri was vested with such jurisdiction. [1 Mo. Territorial Laws, 517.] In 1823 in Stokes v. Stokes, 1 Mo. 320, this court held that the proceeding in a case for divorce was not a common law or chancery proceeding, but was a proceeding *sui generis,* founded on the statute and governed by the rules of the ecclesiastical court of England so far as they may be applicable. Then in 1825 (Laws 1829, p. 329) our State Assembly enacted a statute that ''the Circuit Court, sitting as a court of chancery, shall have jurisdiction in all causes of divorce and alimony and maintenance; and the like process, practice, and proceedings shall be had in such cases as are usually had on the equity side of the court. . . .''

Our Code, which was adopted in 1849 (Laws of Mo. 1848-9, p. 73) abolished the distinction between actions at law and suits in equity

and provided for but one form of action. In the first revision thereafter jurisdiction of divorce and alimony was continued in the circuit court but the provision "sitting as a court of chancery" was omitted. The process and proceedings were to be the same as "in other civil causes" instead of as "in other causes on the equity side of the court." [R. S. Mo. 1855, p. 663.]

On the other hand the statute (Sec. 1355, R. S. 1929, 2 Mo. Stat. Ann., p. 1564) pertaining to alimony, maintenance and the care and custody of the children has remained practically the same since its enactment in 1825 when the proceeding was assigned to chancery. It then read: "That when a divorce shall be decreed, it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, and also touching the care, custody and maintenance of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just; and in case the wife is complainant, to order the defendant to give reasonable security for such alimony and maintenance, and upon his neglect or refusal to give such reasonable security as shall be required of him, or upon default of himself and his security, if any there be, to pay or provide such alimony and maintenance, to award an execution for the collection of the same, or to enforce the performance of the said decree or order, or by sequestration of property, or by such other lawful ways and means as is usual and according to the course and practice of said court; the said court may also, on the application of either party, from time to time make such alterations as to the allowance for alimony and maintenance, as may be necessary and proper; it shall also be in the discretion of the court to order any reasonable sum to be paid for the support of the wife during the pendency of her application for a divorce."

■ To aid the enforcement of its decrees the court, by this statute, was specifically given the old chancery remedy of sequestration as well as such other ways and means "as is usual and according to the practice of said court." At the time of its enactment the "practice of said court" must have referred to chancery practice but after the revision of 1855 the full power of the circuit court as a court both of law and equity was probably intended. Under the code it is the duty of the circuit court to administer both legal and equitable rights and remedies when necessary in the same civil action. [McFarland v. Mo. Pac. Ry. Co., 125 Mo. 253, 275, 28 S. W. 590.] In the growth of our jurisprudence, it is true that certain of the old equitable remedies have been displaced. Sequestration is no longer vital. This process could not issue until the person failing to comply with the order of the court was put in contempt and imprisoned. As imprisonment for debt is abolished, this writ became no longer available merely to compel the payment of money such as an award of alimony. [Roberts v. Stoner, 18 Mo. 481; Coughlin v. Ehlert, 39 Mo. 285.]

Yet the granting of this power at the time the statute was enacted was significant.

This court from time to time has sanctioned the application of equitable remedies in divorce proceedings.

In Crews v. Mooney, 74 Mo. 26, where the power of the court to enter the nature of decree it did was in question, it was held the court had jurisdiction to approve a voluntary property settlement between the parties to a divorce action because the court possessed full equity power to approve and enforce agreements between husband and wife and at the same time by statute possessed jurisdiction of divorce.

In State ex rel. Dawson v. St. Louis Court of Appeals, 99 Mo. 216, 12 S. W. 661, we held this State has adopted to a limited extent the English practice of taking away privileges to enforce payment of alimony awarded pending the litigation. We cited with approval a case on the very issue involved in this proceeding viz., Latham v. Latham, 2 Swab. & T. 299, where the court refused to make a decree *nisi* absolute, until the husband paid money due to the wife on account of alimony *pendente lite*. [See also Waters v. Waters, 49 Mo. 385, and Gercke v. Gercke, 100 Mo. 237, 13 S. W. 400.]

We have held the jurisdiction in suits for divorce and alimony to be two-fold. In the case of In re Gladys Morgan, 117 Mo. 249, 21 S. W. 1122 and 22 S. W. 913, we observed that the divorce and alimony part of the jurisdiction belonged to the ecclesiastical court in England, and the power to make awards as to the custody of the children was a part of the ancient chancery jurisdiction. We said: ''The circuit court exercising ecclesiastical powers in divorce proceedings is governed as to the substantial rights of the parties, by the common-law practice in such cases, except as modified by statute law. . . . And in like manner the circuit court in administering this particular chancery jurisdiction granted by the statute will be guided by chancery practice, except as modified by the statute.''

It has been said that a divorce suit is a triangular action in that besides the two parties the State as representing the community occupies, without being mentioned in the pleadings, the position of a third party. The conscience of the court must protect the public interest and those persons especially interested but not before the court such as children born, or *en ventre sa mere*. [Bishop, Marriage, Divorce and Separation, secs. 495-6; Robertson v. Robertson, 270 Mo. 137, 192 S. W. 988.] The judge may in a large degree take care of the public's interest, was decided in Milster v. Milster, 200 Mo. App. 603, 209 S. W. 620. This can be possible only if the court may conform its orders to the existing equities of all parties and having the duty of protecting the public interest, necessarily, it must have the power to do so.

In view of these decisions and the existing statutes we reaffirm the holding of Stokes v. Stokes, supra. We find it to be the rule in this

State that a proceeding for divorce and alimony is a proceeding *sui generis* founded on statute, not purely a common law or equitable proceeding, but having qualities of both.

The cases cited by relator as furnishing the basis for conflict do say that generally a proceeding for divorce and alimony is an action at law, not in equity. However, they cannot be used to support relator's contention as they qualify the above statement by explaining that while such a proceeding originated in the common law of England, in this State it is a statutory rather than an equitable action. They do not hold that remedies of an equitable nature cannot be applied. For instance, Chapman v. Chapman, 269 Mo. 663, 192 S. W. 448, which held that a judgment *in rem* for alimony where service was procured by publication could not be upheld, found that in a divorce case the court might be called upon to decide questions of equitable jurisprudence. Furthermore, it criticized Keller v. St. Louis, 152 Mo. 596, 54 S. W. 483, 47 L. R. A. 391, and Creasey v. Creasey, 175 Mo. App. 237, 157 S. W. 863, because they decided that divorce in this State was *entirely* a statutory proceeding. Nelson v. Nelson, 282 Mo. 412, 221 S. W. 1066, en banc, says an action for divorce and alimony is unique in character and must be considered with reference to the ecclesiastical law. It does not deny that out statute adopts old chancery practices, but merely finds that many of the old theories have become obsolete. It holds solely that the courts of this State have no power to revoke or modify an installment of alimony which has accrued prior to the making of the application therefor. Arnold v. Arnold (Mo.), 220 S. W. 996, en banc, decides that a proceeding for divorce is an action at law "in that courts of general common-law jurisdiction, as distinguished from the equity side of such courts, by statute are vested with jurisdiction of such cases with all their incidents." This statement is misleading in view of the history of the proceeding in this State which demonstrates that jurisdiction is vested expressly in the *circuit court*. This court under our Constitution has jurisdiction both at law and in equity. However, the opinion goes on to hold that a divorce suit is a proceeding *sui generis* with a practice similar to equity in that no specific finding of fact is required, an appellate court determines the case *de novo* and is not bound by the findings of the court below, but may make a different finding of its own. Moreover, in this very case *a conditional award was upheld,* that is, an award of alimony in gross on condition that the plaintiff waive her dower and marital rights. Watts v. Watts, 304 Mo. 361, 263 S. W. 421, only holds that the jurisdiction of the courts to determine suits for divorce and alimony is limited by statute.

Nor does the fact that Coughlin v. Ehlert, supra, and Chapman v. Chapman, supra, hold that a judgment for alimony is simply an order for the payment of money; and Nelson v. Nelson, supra, holds that such a judgment is subject to the same incidents as judgments

in actions at law, furnish ground for conflict. These statements must be read in the light of the statute discussed above which, as we have pointed out, gives the court means for enforcement of its decrees which are not usually incident to other money judgments. [See Hagemann v. Pinska, 225 Mo. App. 521, 37 S. W. (2d) 463.]

Respondents have imposed upon the relator, as a price of the decree it offers him, the obligation of first submitting to equitable terms. This is an equitable rule so well known to our practice as to require no discussion. [Whalen v. Reilly, 61 Mo. 656; Kline v. Vogel, 90 Mo. 239, 1 S. W. 733; Priest v. Oehler, 328 Mo. 590, 41 S. W. (2d) 783.]

We find that the respondents' opinion is not in conflict with our decisions and that our writ was improvidently issued. The writ should be quashed. It is so ordered.

All concur, except *Hays, J.*, absent.